Filed 12/11/25  P. v. Bushee CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>ANDY BUSHEE,<br><br>     Defendant and Appellant. | A172603<br><br>(Solano County Super. Ct.<br> Nos. FCR197955, FCR205793) |

Andy Bushee, who has been committed under the Mentally Disordered Offender Act (Pen. Code,[1] § 2962 et seq.) as a Mentally Disordered Offender (MDO) since 2006, appeals the trial court's denial of his request to be released to an outpatient setting after a bench trial in which the court found Bushee continued to be an MDO and extended his commitment to the Department of State Hospitals (DSH) from March 10, 2025, to March 10, 2026.  Bushee argues evidence presented at the one-day trial "would cause a reasonable person to have a strong suspicion that Bushee could be safely and effectively treated in the community," and "[s]ubstantial evidence did not support the trial court's ruling to the contrary."  We disagree and affirm the commitment.

---

[1] Further undesignated statutory references are to the Penal Code.

1

## BACKGROUND

In 2002 and again in 2003, Bushee pled no contest to two separate counts of battery on a non-confined person by a prisoner (§ 4501.5) and was sentenced to an aggregate term of three years in state prison. In 2006, Bushee was committed to the DSH as an MDO, and in 2009, he was transferred to Patton State Hospital, where he is currently housed.

On August 23, 2024, pursuant to section 2970, the prosecution filed a petition to extend for a period of one year Bushee's civil commitment that was set to expire on March 10, 2025, alleging that Bushee continued to suffer from a severe mental disorder that was not in remission and/or could not be kept in remission without treatment, and that he represented a substantial danger to others.

Bushee denied the allegations of the petition and waived his right to a jury trial; a court trial was held on January 29, 2025, at which Bushee appeared via Zoom. On January 28, 2025, the Conditional Release Program (CONREP) filed a placement report with the court that was provided to the parties but was not admitted into evidence.[2]

At trial, Dr. Joshua Craig testified as an expert in the field of psychology and as Bushee's primary treating psychologist at Patton State Hospital since June 2021. Dr. Craig represented he treats Bushee for a severe mental disorder and testified as to the related symptoms that Bushee displays, including "highly delusional beliefs," anxiety, and aggression "towards himself and to others." These symptoms "come in waves," but "they . . . aren't getting better. . . . [T]hey are staying consistent." Bushee's attendance in group sessions has been "poor," somewhere "in the 40 to 50

---

[2] No party appears to have sought the report's admission, thus we do not refer to or rely on its contents.

percent range"; he has been unable to implement coping strategies for his illness without guidance from Dr. Craig or other staff; and he "frequently" uses supplementary medication (in addition to his regularly prescribed medication) to control his anxiety and other harmful thoughts and symptoms.

Dr. Craig represented that Bushee was rated a "low risk" for violence and for substance abuse "in the hospital setting"; however, his single incidence of violence in 2024 occurred the day after Bushee's "low risk" assessment was made.

Dr. Mario Souza, a senior psychologist specialist in the forensic evaluation department at Patton State Hospital also testified as an expert. Dr. Souza conducted an "extension evaluation" of Bushee pursuant to section 2970 for the period from March 2024 through March 2025. As part of his evaluation, Dr. Souza interviewed Bushee in person in July 2024 and reviewed Bushee's medical records, incident reports, progress notes, attendance records, and treatment plans. He also listened to the testimony of Dr. Craig at trial.

When Dr. Souza met with Bushee in July, Bushee "had notable bleeding from his scalp area" caused by "picking" that Bushee engages in "when he's very anxious or nervous or feeling paranoid." During the interview, Bushee represented he had been experiencing daily auditory hallucinations and denied experiencing delusional beliefs, but then "on his own, spontaneously produced . . . delusional beliefs regarding his peers and staff." Ultimately, Dr. Souza opined that Bushee suffered from a qualifying mental disorder that is not in remission and "absolutely" impairs Bushee's thought and emotional processes and behavior. Dr. Souza stated, "I do believe Mr. Bushee represents a substantial danger of physical harm to

3

others due to his severe mental disorder" and explained Bushee's "paranoia, delusions, and auditory hallucinations have in fact led to violence in the past. They contributed to his . . . committing offenses, and they've also contributed to violence that he's engaged in previously in previous reporting periods in DSH." Without appropriate treatment and medication, Dr. Souza opined that Bushee's symptoms would "absolutely" worsen, which would "significantly" increase the likelihood of elevating his violence risk.

Bushee was then given the opportunity to testify. When his attorney asked if he felt he was "ready to be released from the hospital," Bushee replied, "Uh, apparently, um, no." The attorney followed up and asked, "Do you desire to go to CONREP?" Bushee replied, "Yes." Bushee's attorney inquired about the 2024 incident of violence: "Why did you punch . . . your peer in the chest?" Bushee answered, "Apparently, um, it was -- it was me, but it was led me on. It wasn't -- um, it was just such a mental -- it wasn't, like, you know I did it on purpose. You know. Um, yeah." In response to further questioning, Bushee represented that if released to CONREP, he would take his medications, would be involved in therapy, and would refrain from hitting people.

In closing argument, Bushee's attorney "submitted" to the "petition for the one-year extension" but asked the court "to consider releasing Mr. Bushee to CONREP" pursuant to section 2972, subdivision (d). The court declined the request as "premature" despite Bushee's assessment as low risk in an institutional setting and acknowledging Bushee's "many positive things." "[B]ased upon the evidence," the trial court extended Bushee's commitment, in part because, "today, he did not show insight into that assaultive behavior." The court found "beyond a reasonable doubt that Mr. Bushee has a severe mental disorder; it is not in remission; and that by reason of a severe

mental disorder, he continues to represent a substantial danger of physical harm to others."

Bushee timely appealed.

## DISCUSSION

On appeal, Bushee does not challenge his recommitment as an MDO, rather he contends the trial court's refusal to release him to CONREP under section 2972, subsection (d) was error that requires reversal. We disagree.

The Mentally Disordered Offender Act "requires that an offender who has been convicted of a specified felony related to a severe mental disorder and who continues to pose a danger to society receive appropriate treatment until the disorder can be kept in remission." (*People v. Harrison* (2013) 57 Cal.4th 1211, 1218.) Specifically, section 2972, subdivision (c) mandates that if the trier of fact finds that "the patient's severe mental health disorder is not in remission or cannot be kept in remission without treatment, and that by reason of the patient's severe mental health disorder, the patient represents a substantial danger of physical harm to others, the court shall order the patient recommitted to the facility in which the patient was confined at the time the petition was filed . . . ." If, however, "the committing court finds that there is reasonable cause to believe that the committed person can be safely and effectively treated on an outpatient basis," then the person "shall be released on outpatient status." (§ 2972, subd. (d).) To obtain outpatient treatment, "the patient must raise a strong suspicion in a person of ordinary prudence that outpatient treatment would be safe and effective." (*People v. Gregerson* (2011) 202 Cal.App.4th 306, 319 (*Gregerson*).)

In the MDO context, we review the trial court's findings for substantial evidence. (*People v. Clark* (2000) 82 Cal.App.4th 1072, 1082; *Gregerson*, *supra*, 202 Cal.App.4th at p. 320.) This substantial evidence

5

standard is the same standard of review used in determining a claim of insufficiency of the evidence in a criminal case. (*People v. Rish* (2008) 163 Cal.App.4th 1370, 1385, citing *People v. Miller* (1994) 25 Cal.App.4th 913, 919–920.) Thus, " 'we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the [trier of fact] could reasonably have deduced from the evidence. [Citation.] . . . A reversal for insufficient evidence 'is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the . . . verdict.' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87, quoting *People v. Zamudio* (2008) 43 Cal.4th 327, 357; see also *People v. Clark*, *supra*, 82 Cal.App.4th at p. 1082 ["In considering the sufficiency of the evidence to support MDO findings, an appellate court must determine whether, on the whole record, a rational trier of fact could have found that defendant is an MDO beyond a reasonable doubt, considering all the evidence in the light which is most favorable to the People, and drawing all inferences the trier could reasonably have made to support the finding"].)

The party seeking relief in MDO proceedings bears the burden of proof that such treatment is appropriate. (*Gregerson*, *supra*, 202 Cal.App.4th at pp. 315–316.) The "reasonable cause" burden set forth in section 2972, subdivision (d) has been likened to the "probable cause" and "sufficient cause" standards. (*Gregerson*, at p. 319, citing *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 251 and Assem. Com. on Judiciary com., reprinted at 29B pt. 1A, West's Ann. Evid. Code (2011 ed.) foll. § 115, p. 17].) "Reasonable cause" is "objective and fact driven: Does the evidence raise reasonable cause to believe outpatient treatment would be safe and effective? The evidence does so if it would raise a strong suspicion of that in a person of ordinary prudence." (*Gregerson*, at p. 320.) If the court denies a request for outpatient

6

treatment, "its order will be affirmed if substantial evidence shows there was no such reasonable cause." (*Ibid.*)

On appeal, Bushee asserts he introduced evidence at trial "that would cause a reasonable person to have a strong suspicion that Bushee could be safely and effectively treated in the community." He claims that Bushee's testimony, which included promises to take his medications, continue his therapy, and refrain from hitting others "satisf[ies] the very low reasonable cause standard," particularly when, he contends, the prosecution witnesses did not specifically address his suitability for outpatient treatment or opine as to whether Bushee's current medication and therapy sessions could be provided in an outpatient setting. We are not persuaded.

Bushee's characterization of the reasonable cause standard as "very low" does not change the court's statutory requirement to recommit Bushee "to the facility in which the patient was confined at the time the petition was filed" if the court finds that Bushee has a "severe mental disorder [that] is not in remission" that causes Bushee to represent "a substantial danger of physical harm to others." (§ 2972, subd. (c).) Those are the specific findings the court made—that are not challenged on appeal—and it is uncontested that Bushee suffers from a severe mental disorder that requires medication, is not in remission, and moved him to commit another assault in 2024. It therefore became Bushee's burden to demonstrate "reasonable cause" to believe that he could be "safely and effectively treated on an outpatient basis." (§ 2972, subd. (d).)

In this context, Bushee's testimonial promises do not satisfy the reasonable cause standard. (See, e.g., *People v. Rish*, *supra*, 163 Cal.App.4th at p. 1385 ["This testimony alone, however, is insufficient to show that there was reasonable cause to believe that Rish was suitable for treatment on an

7

outpatient basis. Even if accepted as true, such evidence does not come close to addressing how Rish intended to comply with outpatient treatment and how such treatment would be safe and effective"].) First, when initially asked if he was ready to be released, Bushee answered, "no." Second, when asked about the 2024 assault, Bushee tried to avoid blame, "[i]t was me, but it was led me on . . . it was just such a mental . . . it wasn't like, you know, I did it on purpose." Third, Bushee's trial attorney did not ask either Dr. Craig or Dr. Souza if outpatient treatment was suitable for Bushee or would be safe or effective.

In contrast, Dr. Craig opined that Bushee's severe mental disorder is not in remission and testified that Bushee regularly fails to attend group sessions, is not able to implement coping mechanisms independently, and frequently requires supplemental medication in addition to his regular prescriptions in order to manage his symptoms. He clarified that Bushee's assessment as low risk for violence is "in a hospital setting," and the day following that low risk assessment, Bushee committed an assault. Consistently, Dr. Souza noted scalp bleeding, which suggested Bushee was picking in response to active symptoms of his disorder. He opined that without appropriate treatment and medication, Bushee's symptoms would "absolutely" worsen, which would "significantly" increase the likelihood of elevating his violence risk.

As such, insufficient evidence was presented to raise a strong suspicion in a person of ordinary prudence that outpatient treatment would be safe and effective. (See *Gregerson, supra*, 202 Cal.App.4th at p. 320.) Because Bushee did not demonstrate reasonable cause to support outpatient release under section 2972, subdivision (d), the court's denial of Bushee's CONREP referral request was not error.

## DISPOSITION

The judgment is affirmed.

DESAUTELS, J.

We concur:


STEWART, P.J.


RICHMAN, J.


*People v. Bushee* (A172603)


10